THE BROADVIEW SAVINGS & LOAN CO., APPELLANT, *v.*
BUCKEYE UNION INSURANCE CO. ET AL., APPELLEES.

(No. 81-1084—Decided May 12, 1982.)

*Csank, Csank & Coaxum Co., L.P.A., Mr. James F. Csank,*
and *Mr. Thomas J. Lee,* for appellant.

*Messrs. Ulmer, Berne, Laronge, Glickman & Curtis* and
*Mr. Harold H. Reader,* for appellees.

*Per Curiam.* We are in agreement with the Court of Ap-

peals. Broadview argues that the law set forth in the recent case of *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, should apply here. While the principles set forth in *Hounshell* do apply, a review of the facts of both cases leads us to the conclusion that the results are inapposite.

In *Hounshell,* two insurance companies wrote policies of insurance covering the same property. Following a loss by fire, one of the companies, American States Insurance Company, offered to pay the insured to the extent of its liability on a pro rata basis. After this offer was refused, American States increased the offer. This court found that, by making these settlement offers, American States waived its right to assert the one-year limitation of action defense contained in the policy of insurance. The holding was that:

" * * * a waiver in these types of cases may occur when the insurer, by its acts or declarations, evidences a recognition of liability under the policy, and the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract.

"The facts in the instant case show that there was more than negotiation or discussion concerning the liability of the company on the policy. The offers made by American States implicitly led the appellees to believe that the company would be liable under the policy for the pro rata share of the fire loss, and it could reasonably be found by a trier of the facts that the result which followed from this stance of the company was the delay of the appellees in filing an action on the insurance contract." (67 Ohio St. 2d, at 431-432.)

While holding that the evidence established that American States had admitted a pro rata liability on the policy and that none of the correspondence between American States and the insured indicated a denial of liability, but rather, merely a question as to the extent of liability, this court explained that:

"[i]t is not our conclusion here that all offers of settlement made by insurance companies to the insured are to be construed as waivers of the time limitation. Where there is a specific denial of liability upon the policy, either totally or in part, there would generally be no waiver occasioned by an offer of settlement. We recognize and endorse the principle that

a waiver comes into existence upon an offer that is an express or implied admission of liability." (67 Ohio St. 2d, at 432-433.)

This court emphasized the fact that the insurer had made an offer of $12,000 in settlement of the loss, and that further negotiation followed the specific offer. We found this to constitute more than negotiation or discussion concerning the liability of the company.

The instant action involves quite a different factual picture. Contrary to the position taken by American States in *Hounshell,* the record here does not show that appellee Ohio Fair Plan had either admitted liability or made any settlement offer. In this regard, the Court of Appeals, after reviewing the affidavit of Paul Csank—the only evidence submitted to the trial court on this issue of estoppel to deny the one-year limitation of action provision—appropriately commented:

"In the instant case, it is our judgment that the evidence presented in support of Broadview Savings' argument of estoppel was insufficient to negate the clear and unambiguous time limitation set forth by the parties in their contract of insurance. Csank's affidavit indicates that when the period during which Broadview Savings could commence suit ran out, Ohio Fair Plan was proceeding to its internal determination of whether or not to pay the claim under the policy in conjunction with good faith negotiations contemporaneously occurring between the parties. The mere assertion by Ohio Fair Plan's adjuster that there was 'no problem' with the claim did not nullify the evident fact that Ohio Fair Plan was, at that point, only in the process of determining the validity of the claim under the policy."

After a review of all the material submitted to the trial court on the motion for summary judgment, we hold that no settlement offers and actions by or on behalf of the insurance company here could have reasonably led the mortgagee Broadview to believe that the matter was being settled, and that it would be relieved of its contractual responsibility to bring legal action within the period set forth in the policy.

Although Broadview claims that the affidavit of its counsel establishes good faith settlement negotiations, a review of the affidavit indicates to the contrary. In essence, the affidavit says that Wayne Groah, the adjuster, met with Broadview's

attorney before December 15, 1975, to discuss Broadview's claim for loss under the mortgage clause. Although the affidavit states that Groah said he saw no problem with the claim itself (a fact which Groah disputes), Groah later contacted Broadview's attorney to advise that the file would be forwarded to Ohio Fair Plan's attorney for review. Significantly, Broadview's attorney's affidavit does not identify any settlement offer made by Ohio Fair Plan, nor does it represent that statements were made in the nature of negotiations. Rather, Broadview's attorney conceded that he was aware of the one-year contractual limitation and was relying upon the diligence of the insurer and its agents in the conduct of negotiations and processing of the file.

Under these circumstances, where Ohio Fair Plan's adjuster was attempting to gather information for consideration of the claim, and where no settlement offers were made or any assurances made with respect to the likelihood of future settlement offers, there is no basis for an estoppel of the insurance company's right to enforce the suit limitation provision.

Based on all the foregoing, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. BROWN, Acting C. J., KEEFE, SWEENEY, LOCHER, HOLMES and KRUPANSKY, JJ., concur.

C. BROWN, J., dissents.

KEEFE, J., of the First Appellate District, sitting for CELEBREZZE, C. J.

CLIFFORD F. BROWN, J., dissenting. The majority has reasoned that although the principles set forth in *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, apply to the present case, "a review of the facts of both cases leads us to the conclusion that the results are inapposite." Because I believe the law announced in *Hounshell* has been misapplied, I must respectfully dissent.

Although the majority's opinion quotes extensively from the text of *Hounshell*, it pointedly ignores the law as announced in the syllabus which reads as follows:

"An insurance company may be held to have waived a

limitation of action clause in a fire insurance policy by acts or declarations *which evidence a recognition of liability, or* acts or declarations which *hold out a reasonable hope of adjustment* and which acts or declarations *occasion the delay by the insured* in filing an action on the insurance contract until after the period of limitations has expired." (Emphasis added.)

In my view there are sufficient facts in the record to demonstrate that the insurer in this case both evidenced a recognition of its liability and held out a reasonable hope of adjustment which occasioned the delay of Broadview in filing suit: Broadview was apprised of the claim (May 15, 1975); letters requesting resolution of the claim were sent (September 22, 1975; November 6, 1975); Ohio Fair Plan's adjuster stated that he envisioned "no problem with the claim itself" (meeting in December of 1975); and Broadview was informed that the adjuster was forwarding the file to Ohio Fair Plan's legal counsel for the purpose of determining the amount payable (phone call of December 15, 1975). In fact, the file was not forwarded until *after* the one year contractual time limitation had expired (January 8, 1976).

To conclude, as has the majority, that the insurer was merely " ' in the process of [internally] determining the validity of the claim under the policy' " is to ignore the assertion made by Ohio Fair Plan's adjuster that "no problem" as to liability existed. Moreover, the adjuster held out a reasonable hope of adjustment when he informed Broadview's attorney that he was currently processing the file (even though he did not do so for approximately three weeks). Thus, sufficient assurances were transmitted to Broadview's attorney to lead him to reasonably believe that there was a likelihood of a future settlement offer. Indeed, such an offer was ultimately extended.

The majority attempts to distinguish *Hounshell* from the present case on the basis that here the insurer made no offer to the claimant prior to the expiration of the one-year time limitation contained in the policy. However, whether or not an actual offer is made should not be determinative. Rather, our focus should be, first, on whether or not the insurer "evidence[d] a recognition of liability". *Hounshell, supra.* Ohio Fair Plan has clearly done this in stating that it could foresee

"no problem" with the claim. Secondly, even though the offer in this case was made *after* the expiration of the one-year provision, the fact that such an offer was even made is certainly an indication that Broadview could have interpreted the ongoing negotiations as those which held out "a reasonable hope of adjustment".

As in *Hounshell,* the insurer in this case recognized its liability before the expiration of the one-year limitation period contained in the insurance contract. The only remaining question was the actual settlement amount. The negotiations carried on between the parties were in good faith and the trier of fact could have reasonably concluded that Ohio Fair Plan held out a reasonable hope of adjustment which occasioned Broadview's delay in the filing of its action. This court should not reward dilatory tactics used by insurance companies in the conduct of their negotiations and processing of their files. The majority's decision, in direct contravention of *Hounshell,* allows an insurer to avoid liability by enforcement of a suit limitation provision even though the same insurer had previously acknowledged liability and held out a reasonable hope of adjustment prior to the expiration of the limitation period.