OPINION *Page 2 
{¶ 1} Brown Township appeals a summary judgment of the Court of Common Pleas of Delaware County, Ohio, which held appellee Consolidated Electric Cooperative, Inc. is a public utility, and exempt from Brown Township's zoning regulations. Brown Township assigns two errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ERRED IN DETERMINING THAT CONSOLIDATED ELECTRIC COOPERATIVE, INC. ("CONSOLIDATED") INCLUSIVE OF CONSOLIDATED'S SUBSIDIARIES (SUBSIDIARIES"), IS COLLECTIVELY A "PUBLIC UTILITY" EXEMPT FROM TOWNSHIP ZONING REGULATIONS FOR PURPOSES OF R.C. 519.211, A `PUBLIC UTILITY' ENTITLED TO EXEMPTION FROM TOWNSHIP ZONING REGULATIONS AND THAT THE SUBSIDIARIES, THROUGH THEIR MERE CONNECTION TO CONSOLIDATED, ARE ALSO `PUBLIC UTILITIES' AND EXEMPT FROM TOWNSHIP ZONING REGULATIONS PURSUANT TO R.C. 519.211.
 {¶ 3} "II. THE TRIAL COURT ERRED IN FAILING TO DETERMINE THAT THE SUBSIDIARIES OF CONSOLIDATED ELECTRIC COOPERATIVE, INC. THEMSELVES, INDEPENDENT OF THE PARENT COMPANY, CONSOLIDATED ELECTRIC COOPERATIVE, INC., QUALIFY AS PUBLIC UTILITIES FOR PURPOSES OF EXEMPTION FROM TOWNSHIP ZONING REGULATIONS PURSUANT TO R.C. 519.211."
 {¶ 4} The trial court found the parties were in general agreement as to the facts, sources of law, and legal questions at issue. The court's judgment entry of October 13, 2006 found Consolidated is an Ohio non-profit corporation organized under the Rural *Page 3 
Electrification Act of 1936. Consolidated has its principal place of business in Mount Gilead, Ohio, and operates a district office in Delaware County, Ohio, currently located on State Route 36. Consolidated is a member-owned cooperative consisting of energy consumers throughout six counties. The majority of Consolidated's business involves the distribution of the electricity to its customers/members, but Consolidated also offers services for natural gas, propane, and limited telephone services through its subsidiaries, which are also Ohio non-profit corporations.
 {¶ 5} Consolidated has approximately 7,000 members/consumers in Delaware County. Because of its growth and anticipated future growth, Consolidated sought to relocate in Delaware County. Consolidated entered into a lease with an option to purchase 17 acres of real property on State Route 521, owned by the Richard A. Fleming Trust and Nancy A. Fleming Trust. The property is zoned agricultural. Consolidated intends to replicate its Morrow County facilities, which consist of a general office, building storage yard, and a separate outdoor storage structure.
 {¶ 6} Brown Township Trustee Charles Miley objected to the proposed site construction by Consolidated on the grounds the property was zoned agricultural and the Brown Township Zoning ordinance excepted office buildings from the general public utility exemption.
 {¶ 7} Consolidated filed its complaint for declaratory judgment, asking the court to determine its status as a public utility, and Brown Township filed a counterclaim requesting a declaratory judgment concerning the status of Consolidated's subsidiaries, particularly the subsidiary that distributes propane gas. The trial court found Consolidated qualifies as a public utility, and its subsidiaries do not prevent it from *Page 4 
enjoying public utilities status. The court found over 75% of Consolidated's business is dedicated to providing electric distribution services to its customers. The court found even though Consolidated has branched out into other energy and communication services, the vast majority of its business remains the distribution of electricity. The court found the parties did not dispute that Consolidated's primary purpose and use is the distribution of electrical energy services to its customers, and the small percentage of Consolidated's business dedicated to gas, propane, and tele-communications services do not destroy the overall public nature of Consolidated's business.
 {¶ 8} The record indicates Consolidated has five wholly-owned subsidiaries: Bright Choice, Bright Energy, Consolidated Gas Cooperative, Levering Brothers, and Consolidated Electric Foundation. Bright Choice provides dial-up Internet access service, broadband Internet access service, wireless Internet access service, health monitoring equipment, and long distance phone service. Bright Energy provides natural gas, pipeline construction and maintenance, and other services and products ancillary to providing natural gas, such as inspections and sale of carbon monoxide detectors. Consolidated Gas Cooperative provides propane by delivery truck, pipeline and metering, or retail sales at its office. Consolidated Electric Foundation is a 501(C) nonprofit foundation providing funding for community service projects. Levering Brothers is a plumbing, HVAC and electrical company. Consolidated does not operate Levering Brothers out of its Mount Gilead facility and apparently has no plans to move it to the new Delaware facility.
 {¶ 9} Consolidated proposes to use its new facility for various activities including the propane gas business, which requires the installation of a 30,000 gallon propane *Page 5 
gas storage tank for filling tank trucks with propane gas for delivery to consumers. Consolidated Gas Cooperative also intends to install a 500 gallon propane gas storage tank, to be used to fill small backyard grill type propane tanks to be sold or exchanged to customers on site.
 {¶ 10} Article 7 of the Brown Township Zoning Regulations lists various uses permitted in land zoned FR-1. It permits single family dwelling units and accessory buildings and uses, watershed protection and conservation projects, and agricultural purposes. The regulations list 18 conditional uses, none of which apply to Consolidated's purposed use of the property.
 {¶ 11} Civ. R. 56 (C) states in pertinent part: Civ. R. 56 states in pertinent part:
 {¶ 12} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." *Page 6 
 {¶ 13} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts,Houndshell v. American States Insurance Company (1981),67 Ohio St. 2d 427. The parties here do not dispute the material facts.
 {¶ 14} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St. 3d 35. This means we review the matter de novo, Doe v. Shaffer, 90 Ohio St.3d 388,2000-Ohio-186.
 {¶ 15} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim,Drescher v. Burt (1996), 75 Ohio St. 3d 280. Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id. The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, Henkle v.Henkle (1991), 75 Ohio App. 3d 732.
 {¶ 16} The trial court correctly found the determination of whether an entity is a public utility is a mixed question of law and fact, Judgment Entry at 5, citing Campanelli v. ATT Wireless Services, Inc. (1999),85 Ohio St. 3d 103, 106, 1999-Ohio-437, 706 N.E. 2d 1267, citing Marano v.Gibbs (1989), 45 Ohio St. 3d 310, 311, 544 N.E. 2d 635, 636. TheMarano court described a public utility as an entity whose nature of operation *Page 7 
is a matter of public concern and whose membership is indiscriminately and reasonably made available to the general public, Marano at 311. Courts must weigh several factors, no single one of which is controlling. The factors include lack of competition in the local marketplace, the goods or services provided, and the existence of regulation by government authority, Campanelli at 106, citations deleted. A public utility is determined by the nature of its business,Ohio Power v. Village of Attica (1970), 23 Ohio St. 2d 37,261 N.E. 2d 112, citations deleted.
 I II {¶ 17} Brown Township's first assignment of error challenges the court's finding Consolidated Electric and its subsidiaries collectively constitute a public utility.
 {¶ 18} Brown Township breaks its first error into two issues. The first issue is whether subsidiaries of a public utility are exempt from township zoning regulations based solely upon their connection to a parent company that qualifies as a public utility. The second issue is whether the parent company's public utility status is destroyed by subsidiaries that are not independently entitled to exemption from the township zoning regulations, when the parent company and its subsidiaries jointly carry on business activities from a single location.
 {¶ 19} Brown Township's second error argues the court should have examined the various subsidiaries individually and independent of the parent company, to determine if they qualify as public utilities. Brown Township breaks its second assignment of error into two issues, the first being whether the subsidiaries must qualify as public utilities separately and independently of Consolidated and each other. The *Page 8 
second issue is whether the distribution of propane constitutes a public utility. Because the arguments are interrelated we will address them together.
 {¶ 20} In Ohio Power, supra, the Supreme Court held: "A non-profit corporation organized to manufacture, distribute and sell electric power to the public, either on a membership or non-membership basis, is a public utility, and a municipality may contract with such a corporation to supply electric power for the use of the municipality and its inhabitants." Syllabus by the court. From the way it has framed the issues, it appears Brown Township concedes Consolidated Electric Cooperative itself qualifies as a public utility. Brown Township also concedes the Revised Code enabling statutes do not confer any power on a Board of Township Trustees or Board of Zoning Appeals in respect to the location, erection, construction, re-construction, change, alteration, maintenance, removal, use, or enlargement of any building or structure of any public utility, or how the public utility uses the land, see R.C.519.211.
 {¶ 21} Brown Township's brief does not challenge the public utility status of the natural gas and communication subsidiaries, but focuses on the propane services provided by Consolidated Gas Cooperative. Brown Township argues the storage tanks Consolidated plans to install at its new facility may jeopardize public health, safety, convenience, prosperity, or general welfare, which township zoning regulations are intended to protect pursuant to R.C. 519.02. The township also argues if Consolidated is permitted to use a single building to house its subsidiaries, it may later decide to use the new facility for other non-utility businesses.
 {¶ 22} The court found over 75% of Consolidated's business is dedicated to providing electric distribution services to its customers, and although it has branched out *Page 9 
into other energy and communications services, the vast majority of its business remains the distribution of electricity. The court found the fact Consolidated has subsidiaries engaged in gas, propane and telecommunications services does not destroy the overall public nature of its business, because each of the subsidiaries is allied to the main public purpose.
 {¶ 23} The trial court cited City of Toledo v. Jenkins (1944),143 Ohio St. 141, 54 N.E. 2d 656, as authority for the proposition that if a public utility engages in incidental uses allied to the main public purpose, those purposes are also public. Brown Township objects theCity of Toledo case is a tax case, and has nothing to do with zoning. The case involves tax exemptions for public use of land, a situation from which we can analogize. The Supreme Court's reasoning is always instructive.
 {¶ 24} In Jenkins, the Supreme Court examined whether certain real estate at the Toledo airport was exempt from taxation. The property consisted of approximately 506 acres of land including two airplane storage hangars with office space and a ticket office; a substation and tower used to house transformers, the distribution system, electric equipment for the airport and field operations; and an office at which gasoline sales were recorded. Some of the office space was leased to private aeronautic businesses and to the U.S. Department of Agriculture and Department of Commerce. Some of the hangar space was rented to private individuals. The property also had two homes, one of which was occupied by the manager of the airport and the other by the serviceman of the airport. There were barns and garages used to store airport and farming tools, and miscellaneous equipment. Some of the property was planted in alfalfa. *Page 10 
 {¶ 25} The Board of Tax Appeals found some of the area was exempt from taxation while other areas and buildings were not. Both parties appealed.
 {¶ 26} The Supreme Court found the use of essential public utility property in the operation of the utility is clearly a public use, and incidental uses allied to the main public purpose are also public. The court stated: "It is the `primary and principal' use that controls and the fact that incidental revenue is derived from the property does not in and of itself alter the public character of the use to which the property is put." Jenkins at 153, citations deleted. For example, renting space and buildings to others to promote aviation by extending service to all the public would be a use incidental to the main public purpose. The barns where the aviation and farming tools were stored were also exempt from taxation. If a worker had been required to sleep on the premises, the building provided for this purpose would be a public use, but residences provided for employees as part of their compensation were subject to taxation. Under the Supreme Court's approach, even the use of the land for agricultural purposes did not alter the character of the use of the land from a public to a non-public one, because it was not unreasonable to put the areas that did not have runways or buildings to a practical and economically sound use rather than just be allowed to grow up with weeds, Id.
 {¶ 27} A fair reading of Jenkins demonstrates the Supreme Court favors a common sense approach to determining what constitutes public use of land. We reject Brown Township's argument all the incidental uses must be directly related to the provision of electricity. Instead, we agree with the trial court gas, propane, and telecommunications services are also public utilities and comprise of a small percentage of Consolidated's overall business of providing energy. *Page 11 
 {¶ 28} Brown Township argues Consolidated Gas does not provide an essential good or service to the general public, but the only evidence in the record contradicts this assertion. Brown Township argues Consolidated Gas is not a utility because it does not occupy a monopolistic or oligopolistic position in the marketplace. InCampanelli, supra, the court found although the utility, a wireless telecommunication company, did not occupy a monopolistic position in its field, "this factor is of less importance, taking into account deregulation and the changing nature of public utilities." Id at 106. Brown Township argues while Consolidated Gas is subject to certain governmental regulations, it is not regulated in the manner other utilities are. We find this unpersuasive, because inCampanelli, the utility was regulated by the FCC, not the PUCO. The Supreme Court found the definition of a public utility must be "flexible". Id. We find under the circumstances at bar, Consolidated Gas meets the test for a public utility.
 {¶ 29} Brown Township objects the trial court's decision permits Consolidated to operate any business under the umbrella of its public utility status. The Jenkins case permitted a minor agricultural use as reasonable under the circumstances, and we find Consolidated may use the new facility for minor uses unrelated to its energy services, as part of the general management of its subsidiaries. However, if Consolidated begins to use the facility for unrelated business on a large scale, Brown Township could challenge its use of the facility.
 {¶ 30} We find the trial court did not err in determining the proposed use of this land is for a public utility, and exempt from zoning. We agree with the trial court Consolidated may house its energy subsidiaries in the proposed facility without *Page 12 
destroying its status as a public utility. We further find the provision of propane gas is a public utility under these circumstances. Accordingly, both the assignments of error are overruled.
 {¶ 31} For the foregoing reasons, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed.
By Gwin, P.J., Hoffman, J., and Delaney, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed. Costs to appellant. *Page 1